William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078
Email: wcrand@wcrand.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

| | | |
|---|---|---|
| GAIL D. BECKLES, | : | ECF |
| Individually and on Behalf of All Other | : | 21 Civ. 2447 |
| Persons Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **COMPLAINT AND** |
| -against- | : | **JURY DEMAND** |
| | : | |
| LIFESPIRE, INC., THOMAS LYDON and | : | |
| JOHN DOES #1-10, | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------------------X

Plaintiff GAIL D. BECKLES ("Plaintiff" or "BECKLES"), on behalf of herself

individually and as class representative of other employees similarly situated, by and through her

attorney, complains and alleges for her complaint against LIFESPIRE, INC., THOMAS LYDON

and JOHN DOES #1-10 (together "Defendant" or "Defendants") as follows:

## NATURE OF THE ACTION

1.  Plaintiff BECKLES was a health aide employed by Defendants..

2.  Plaintiff BECKLES and similar aides were not paid any wages for their first two

weeks of work.

3.  Plaintiff BECKLES and similar aides worked 7 hour and 15 minute shifts and

were paid for only 7 hours of each shift and were not paid any wages for 15 minutes of work

during each shift.

4.     Plaintiff BECKLES and similar aides were not paid spread of hour wages when they worked hours more than ten hour apart during a day.

5.     Plaintiff alleges on behalf of herself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for work for which they were not paid minimum wages and overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

6.     Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages including wages as required under the Wage Parity Act, (b) overtime work performed for which they received straight pay and did not receive time and one half the minimum wage or time and one half their actual wages, and (c) spread of hours work performed for which they did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq*. and the supporting New York State Department of Labor regulations and are also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to Plaintiff and similar employees.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the

FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants reside in this District.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

10.      Plaintiff BECKLES, was, at all relevant times, an adult individual, residing in Kings County in New York State.

11.      Upon information and belief, Defendant LIFESPIRE, INC. (the "Corporate Defendant") is a New York corporation, with its principal place of business is at One Whitehall Street, 9th Floor, New York, N.Y. 10004.

12.      Upon information and belief, Defendant THOMAS LYDON ("LYDON") is an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

13.      Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted

intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

14.     Upon information and belief, LYDON is the President and Chief Executive Officer of the Corporate Defendant and has held these positions during the last 6 years ("LYDON time period").

12.     Upon information and belief, during the LYDON time period, LYDON had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' health aide employees and other employees, and his decisions directly affected the nature and condition of the health care employees' employment.

13.     Upon information and belief, during the LYDON time period, LYDON  (1) had the power to hire and fire the health  aide employees of the Corporate Defendant, (2) supervised and controlled the health aide employees' schedules and conditions of employment, (3) determined the rate and method of payment of the health  aide employees, and (4) maintained employment records related to the health  aide employees.

14.     On March 19, 2021, Plaintiff BECKLES by her attorney mailed a notice of individual liability to Thomas Lydon at LIFESPIRE, INC., One Whitehall Street, 9th Floor, New York, N.Y. 10004.

15.     Upon information and belief, LYDON is one of the ten largest shareholders of LIFESPIRE, INC.

4

16.     The mailing of this notice causes LYDON to be individually liable for wages and other damages owed to the employees of LIFESPIRE, INC.

17.     Upon information and belief, the notice of individual liability was received by Defendant LYDON on or before March 31, 2021.

### COLLECTIVE ACTION ALLEGATIONS

18.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since March 19, 2015 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

19.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

20.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

21.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

22.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

  a.   whether the Defendant employed the Collective Action members within the meaning of the FLSA;

  b.   whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

  c.   what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

  d.   whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

  e.   whether Defendant failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

  f.   whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

g.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.   whether Defendant should be enjoined from such violations of the FLSA in the future.

23.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

24.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

25.     Plaintiff brings her New York Labor Law claim on behalf of all persons who were employed by Defendant at any time from and including March 19, 2015 to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages (including those required by the NY Health Care Worker Wage Parity Act), spread of hour wages, and/or overtime wages and/or were not provided the notices required by the Wage Theft Prevention Act (the "Class").

26.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 40 members of Class during the Class Period.

27.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy— particularly in the context of wage and hour litigation where individual plaintiffs lack the

financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

28.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

29.     Plaintiff is committed to pursuing her action and has retained competent counsel experienced in employment law and class action litigation.

30.     Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

31.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.  whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.  whether Defendant failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per workweek as well as spread of hours pay for hours worked a spread of more than ten hours, within the meaning of the New York Labor Law;

e.  whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees; whether the Defendant should be enjoined from such violations of the New York Labor Law in the future.

## STATEMENT OF FACTS

32.     Plaintiff BECKLES was a health aide employed by LIFESPIRE, INC.

("Company" or "Corporate Defendant") and THOMAS LYDON ("LYDON") (collectively "Defendants"), from about February 20, 2018 until January 17, 2020 (the "time period").

33.     During the time period, BECKLES' title was "Developmental Aide 3."

34.     Defendants are an employment agency that employed BECKLES to work at two day care centers in Brooklyn, New York.

35.     During the time period, BECKLES never worked for Defendants outside of New York City.

36.     BECKLES worked at Dubosky House residence located at 20-30 Bath Street in Brooklyn, N.Y. ("Dubosky") until about June 20, 2018 when BECKLES transferred to the Park Slope Day Care Facility ("Park Slope").

37.     BECKLES' work schedule at both locations was from 8:00 a.m. to 4:00 p.m. with a 15 minute morning break and a 30 minute break for lunch.

38.     BECKLES worked 5 days per week Saturday through Wednesday and sometimes also worked a shift on Thursday.

39.     For each shift, BECKLES was only paid for 7 hours of work even though BECKLES worked 7 hours and 15 minutes.

40.     Furthermore, when BECKLES worked at the Dubosky House residence, when her relief health aide did not show up for work, BECKLES was required to work a double shift 8:00 a.m. to 4:00 p.m. and then from 4:00 p.m. to 12:00 p.m.  This occurred generally about one in five shifts when BECKLES worked for the Dubosky House residence.

41.     When BECKLES worked a double shift and worked a spread of more than 10 hours in a day, BECKLES was paid below minimum wage and was not paid an extra hour of pay

as required by the New York spread of hours law.

42.    BECKLES started working by going to an orientation meeting on February 20, 2018 at the company headquarters at One Whitehall Street, New York, N.Y. from 9:00 a.m. to 5:00 p.m.

43.    BECKLES was told at the orientation that her pay for the orientation time and for her first two weeks of work would be held by LIFESPIRE, INC. and would not be paid to her until BECKLES resigned or was terminated.

44.    BECKLES was terminated on January 17, 2020 and afterwards asked her supervisor, Sharon Hagen, when BECKLES would be paid for her first two weeks of work and orientation time, and Ms. Hagen said to ask the Union.

45.    BECKLES asked her Union rep, Andrea, when BECKLES would get paid for her first two weeks of work and orientation, and Andrea said that she would ask LIFESPIRE, INC., but then subsequently repeatedly responded that LIFESPIRE, INC. had never responded to her.

46.    BECKLES was never paid for her first two weeks of work or for her initial orientation.

47.    BECKLES worked at Dubosky House with approximately 20 other similar health aides and worked at the Park Slope Day care Center with about 25 similar health aides.

48.    BECKLES spoke with similar aides with whom BECKLES worked, including but not limited to Angilette (co-worker at Park Slope), Deon (co-worker at Duboski and Park Slope), Ivan (co-worker at Park Slope), and Carlissa (co-worker at Park Slope), and they all said that they also worked 7 hours and 15 minutes per day and were only paid for 7 hours and also were not paid an extra hour for spread of hours pay when they worked a double shift over a spread of

more than ten hours in a day and also were not paid for their first two weeks of work, and were paid for their hours on their paystub at minimum wage and were not given any health insurance.

49.    On or about May 20, 2019, BECKLES went to a 3 day training course organized by Defendants and spoke with other health aide employees from Defendants' locations in Bronx, Queens, and Brooklyn, including the Sunset Park location, and they also stated that they also worked 7 hours and 15 minutes per day and were only paid for 7 hours and also were not paid an extra hour for spread of hours pay when they worked a double shift over a spread of more than ten hours in a day and also were not paid for their first two weeks of work, and were paid for their hours on their paystub at minimum wage and were not given any health insurance.

50.    While employed by Defendants, BECKLES at times worked more than 40 hours per week.

51.    BECKLES often worked shifts covering more than ten hours in a day for Defendants during her employment.

52.    BECKLES did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which BECKLES worked a spread of more than ten hours.

53.    BECKLES also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all her hours worked and was not paid time and one half the minimum wage rate for her overtime hours and was not paid full time and one half her regular rate for her overtime hours.

54.    Defendants never provided to BECKLES any health insurance.

55.    Medicaid paid Defendants for some or all of BECKLES' services and the services

of the other similar health aide employees.

56.     BECKLES and similar aides were not provided any health insurance and were paid at minimum wage for the hours listed on our paystubs.

57.     BECKLES' co-workers performed the same and/or similar work to that of herself and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

58.     The similar health aides worked in the centers and residences designated by Defendants.

59.     The similar health aides generally worked more than 40 hours per week, but were not paid time and one half their regular rate of pay for their overtime hours and were not paid minimum wages for all their hours worked.

60.     Throughout the time period, Defendant has likewise employed at least 40 other individuals, like BECKLES, in positions as health aides.

61.     During the time period, BECKLES and the similar health aide/maid employees of Defendant were not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principal place of business and telephone number and our specific rate of pay as required by the New York Wage Theft Prevention Act. BECKLES have not been given any specific notice of this information to sign and have not signed any such notice.

62.     Upon information and belief based on her conversations with similar health aide employees, the other health aide employees also were not given such notice.

63.     The health aides similar to BECKLES have not been given any specific notice of

this information to sign and have not signed any such notice.

64.    Defendants never posted a notice in a conspicuous location indicating that Plaintiff and similar health aide employees had a right to minimum wages and/or overtime wages.

## CLAIM I
## FAIR LABOR STANDARDS ACT

65.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

68.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

69.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

70.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

71.    As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members overtime wages and/or minimum wages for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29

U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

72.      As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

73.      The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

74.      Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**CLAIM II**
**<u>NEW YORK LABOR LAW</u>**

75.      Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76.      At all relevant times, Plaintiff and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

77.      Defendants willfully violated Plaintiff's rights, and the rights of the members of the Class, by failing to pay them wages in violation of the New York Labor Law and its regulations.

78.      The Defendants' New York Labor Law violations have caused Plaintiff and the

members of the Class, irreparable harm for which there is no adequate remedy at law.

79.    Due to the Defendants' New York Labor Law violations, Plaintiff and the

members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys'

fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et

seq.

80.    Defendants willfully violated Plaintiff's rights by failing to provide his proper

notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab.

Law § 198(1-a) (enacted on April 9, 2011).

81.    As a result of Defendants' violation of the New York Wage Theft Prevention Act,

Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

### CLAIM III
(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract
With New York State)

82.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint.

83.    Upon information and belief, at all times relevant to this complaint, Defendant

were required to certify and did certify that they paid Plaintiff and members of the Class wages

as required by NY Health Care Worker Wage Parity Act.

84.    The agreement to pay Plaintiff and the Class wages as required by the NY

Health Care Worker Wage Parity Act was made for the benefit of the Plaintiff and the Class.

85.    Defendant breached their obligation to pay Plaintiff and the Class all wages they

were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs

and members of the Class were injured.

86.    Plaintiff and the Class, as third party beneficiaries of Defendants' contract with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, and as persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

**CLAIM IV**
(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

87.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

88.    Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiff and the Class: (1) all wages due for work performed; (2) an extra hour at the minimum wage for working a "spread of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

89.    Defendant accepted and received the benefits of the work performed by Plaintiff and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiff's and the Class' labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, for hours caring for the clients of Defendants.

90.    Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on these amounts.

**CLAIM V**
(Violation of Wage Parity Act Minimum Wage Requirement)

91.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

92.     Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiff and members of the Class wages as required by NY Health Care Worker Wage Parity Act.

93.     Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiff and the members of the Class minimum wages under the NY Health Care Worker Wage Parity Act.

94.     Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiff and members of the Class were injured.

95.     Plaintiff and the Class are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

**CLAIM VI**
(Breach of Contract-Wages)

96.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

97.     Plaintiff and the members of the class entered into contracts with the Defendant under which Plaintiff and the members of the Class were to provide health  aide and maid services and Defendants were required to pay (a) wages as required by law, (b) wages equal to time and one half the regular wage rate for hours worked during Federal holidays and also (c) a

one week paid vacation annually.

98.     Plaintiff and the members of the Class fulfilled their obligations under the contracts, but Defendant failed to pay the wages as required by the contracts.

99.     As a result of Defendants' breach, Plaintiff and the members of the Class are entitled to recover damages, plus interest.

## CLAIM VII
### (Living Wage Act claim)

100.     Plaintiffs reallege and incorporate by reference all the allegations set forth above.

101.     NYC Admin. Code § 6-109 provides that an employer whose employees perform work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay "no less than the living wage and must provide its employees health benefits (supplemental benefits) or must supplement their hourly wage rate by an amount no less than the health benefits supplement rate."

102.     NYC Admin. Code § 6-109 further provides that "[the abovementioned] requirement applies for each hour that the employee works performing the city service contract or subcontract."

103.     The "living wage" and "health benefits" or "health benefits supplement" are the wages and supplements set forth under Homecare Services in § 6-109 of the NYC Admin. Code. Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

104.     Named Plaintiff and other members of the putative class furnished labor to

Defendant in furtherance of its performance of the City Service Contract(s).  Upon information and belief, Defendant willfully paid Named Plaintiff and the other members of the putative class less than the rates of wages and benefits to which Named Plaintiff and the other members of the putative class were entitled.

105.    Defendant's actions as described herein were intentional and not made in good faith.

106.    Upon information and belief, the City Service Contract(s) entered into by Defendant contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

107.    Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiffs.

108.    Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

109.    Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part 13 of the City Service Contract(s).

110.    Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

111.    By reason of its breach of the City Service Contract(s), Defendant is liable  to

Plaintiffs for an amount to be determined at trial, plus interest.

**CLAIM VIII**
**(Notice & Wage Statement Violations – NYLL §195)**

112.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

113.    Defendant has willfully failed to supply Plaintiff and members of the Class with the notice required by NYLL § 195(1), in English or the language identified by Plaintiff or the Class Member as his/her primary language.

114.    Defendant has failed to provide Plaintiff and Members of the Class with a notice containing their  "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with [NYLL §191]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

115.    Defendant has  willfully  failed  to  supply  Plaintiff  and Members of the Class with  an accurate statement of wages as required by NYLL § 195(3), containing the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and

overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

116.    Due to Defendant's violations of the NYLL§ 195(1), Plaintiff and each Class Member is entitled to $50 dollars for each workday in which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

117.    Due to Defendant's violations of the NYLL § 195(3), Plaintiff and each Class Member is entitled to recover from Defendant $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

a.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this

action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

c. Judgment in an amount to be determined at trial, plus interest;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e. An order tolling the statute of limitations;

f. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g. An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA, the New York Labor Law, the New York common law, and/or the NY Health Care Worker Wage Parity Act;

h. An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law and the NY Health Care Worker Wage Parity Act;

i. An award of prejudgment and postjudgment interest;

j. An award of costs and expenses of this action together with reasonable attorney's and expert fees;

k. Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        March 19, 2021

                                LAW OFFICE OF WILLIAM COUDERT RAND

                                _____
                                William Coudert Rand, Esq.
                                *Attorney for Plaintiff*, Individually and on
                                Behalf of All Persons Similarly Situated
                                501 Fifth Avenue 15th Floor
                                New York, New York 10017
                                Tel: (212) 286-1425
                                Fax: (646) 688-3078
                                Email: wcrand@wcrand.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **LIFESPIRE, INC. and THOMAS LYDON ET AL.** to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____          _____  GAIL BECKLES_____
Signature                        Date    Print Name

8