**LAW OFFICE OF WILLIAM COUDERT RAND**
**501 Fifth Avenue, 15th Floor**
**New York, New York 10017**
**Phone (212) 286-1425; Fax: (646) 688-3078**
**Email: wcrand@wcrand.com**

September 15, 2021

**VIA ECF**

Hon. Mary Kay Vyskocil
Daniel Patrick Moynihan
United States Courthouse, Courtroom: 18C
500 Pearl St.
New York, NY 10007-1312

Deputy Phone: (212) 805-0174
Chambers Email: VyskocilNYSDChambers@nysd.uscourts.gov
Chambers Phone: (212) 805-0200

**Re: Gail Beckles v. Lifespire, Inc. et al.,**
**Index No: 1: 21-cv-2447 (MKV)**

**LETTER SEEKING APPROVAL OF FLSA SETTLEMENT**

Dear Judge Vyskocil:

This firm represents the Plaintiff in the above referenced Fair Labor Standards Act ("FLSA") and New York State law individual employment action. I am writing this letter to seek approval of the settlement agreement as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (requiring approval of FLSA settlements). A copy of the fully executed settlement agreement (the "Settlement Agreement") is attached as Exhibit A.

**SUMMARY OF THE CASE**

Plaintiff alleged that she is a health aide. Plaintiff asserted claims for alleged unpaid wages (a) for 15 minutes of each of her 7 hour and 15 minute shifts (employees worked shifts of 7 hours and 15 minutes [8:00 am to 4:00 pm with 45 minutes of breaks], but were only paid for 7 hours of each of these shifts), (b) for spread of hours for days on which she allegedly worked a double shift from 8:00 am to 4:00 pm and 4:00 pm to 12:00am midnight, (c) for minimum wages due under the Wage Parity Act. In addition, Plaintiff sought statutory damages for failure to provide notice of pay information under the New York Wage Theft Prevention Act and wages for the first two weeks that she worked.

Defendants answered the Complaint in this action on June 9, 2021, unequivocally denied any liability or wrongdoing, and asserted that Plaintiff was paid for all the wages that she was due under the law, including the Fair Labor Standards Act, New York Labor Laws, and the other statutes under which Plaintiff asserted claims. To the extent that this matter were to be fully litigated and the Parties were not able to reach a fair and reasonable settlement, Defendants intended to vigorously defend themselves against the claims.

**TERMS OF THE SETTLEMENT**

The settlement agreement is fair and reasonable. The settlement was negotiated at arm's length, over phone calls and email exchanges over a number of days, and was facilitated by the informal production of records by the Defendants and a number of offers and counter offers. The final settlement, subject to court approval, is in the total amount of $10,000, which is to be paid as follows: to Plaintiff Gail Beckles in the amount of $6,265, and to the Law Office of William Coudert Rand in the amount of $3,735 (1/3 of settlement recovery plus reimbursement of complaint filing fee of $402), as and for attorneys' fees and costs. In exchange for the settlement consideration, Plaintiff is releasing the claims she brought in her complaint.

**APPLICATION OF FACTORS FOR APPROVING FLSA SETTLEMENTS**

The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. See 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]).

Courts have interpreted this limitation to mean that parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. See *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not, is permissible because NYLL parallel claims do not require court approval); *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor,* 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein,* 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

Courts considering motions to approve FLSA settlements, i.e., *Cheeks* motion, must be satisfied that the proposed settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." Id. (internal quotations omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts consider the totality of circumstances, including but not limited to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud

or collusion." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), quoting, Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

**Plaintiff's Possible Range of Recovery**

Here, the Plaintiff sought damages for two weeks of alleged unpaid wages at the beginning of her employment and 15 minutes of unpaid work per 8 hour shift and statutory damages under the New York Wage Theft Prevention Act which provides up to $5,000 of damages for failure to provide notice of wage rate and employer information and failure to record all hours worked on the paychecks. Plaintiff's claims and potential full damages are as follows: (a) unpaid first two weeks of work (total potential damage of $754 equal to 8 shifts times 7.25 hours times $13.00 per hour), (b) unpaid 15 minutes per shift (total potential damages equal to $1,344 (estimated by 96 weeks of work times 4 shifts per week times $14 per hour times .25); (c) unpaid Wage Parity Minimum wages (total potential damages of $1,276 equal to rate underpaid of $1.09 per hour [difference between $13 rate and $14.09 WPA minimum rate] times hours worked in 2018 of 1,276 [estimated to be 44 weeks times 4 shifts per week times 7.25 hours per shift]), (d) spread of hours wages (applies to double shifts which it is estimated happened once every two weeks so damages equals $672 [1 hour at average of $14.00 times 96 weeks divided by 2] and (e) Wage Theft Prevention Act damages of $5,000 [WTPA notice signed by Plaintiff so claim is for hours on paychecks being incorrect]. Thus, the total alleged damages would be unpaid wages of $4,046, plus 100% liquidated damages of $4,046 plus WTPA damages equal to $5,000 equal to $13,092.

The Plaintiff's settlement recovery in the amount of $6,265 is reasonable as it represents 48% of Plaintiff's potential recovery ($6,265/$13,092). There is no documented proof in the case demonstrating (a) Plaintiff's allegations that she was not paid for fifteen minutes of each 8 hour shift which were allegedly illegally deducted as a break and (b) that she was not paid for her hours worked during the first two weeks of her employment. As a result, the evidence will likely be contradictory witness testimony of Plaintiff and Defendant witnesses. Accordingly a 48% settlement is fair and reasonable.

The settlement recovery was reduced by Plaintiff's attorneys' costs and 1/3 legal fees which are to be paid to Plaintiff's attorneys. This amount is reasonable. *Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (noting that courts in this circuit routinely grant requests for attorney fee award of 33% and collecting cases); *Cortes v. New Creators, Inc.,* 2016 WL 3455383, at *5, 9 (S.D.N.Y. June 20, 2016) (approving fee award of one-third of settlement and noting such award is "consistent with contingency fees that are commonly accepted in the Second Circuit in FLSA cases"); *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding attorneys' fees of 1/3 settlement fund).

We believe that, in light of the uncertainties associated with establishing liquidated damages and the strong desire to avoid future legal proceedings, the amount payable to Plaintiff falls within the range of reasonableness. *See Beckert v. Rubinov,* 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)"). Here, the parties were able to reach an agreement at a relatively early stage of proceedings, before any trial. *See Burgos v. San Miguel Transp., Inc.,* 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing early stage of the case as

one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated).

**Avoiding Anticipated Burdens and Expenses**

Litigating FLSA claims and damages is typically a fact-intensive process demanding in-depth and potentially costly and uncertain litigation by both parties, including written discovery, depositions, expert discovery, voluminous pre-trial briefing of summary judgment motions regarding liability and damages issues, and potentially, a lengthy trial on liability and/or damages. In this case, each party benefits substantially from the settlement. In short, a settlement now avoids years of litigation and significant expenses for document discovery, depositions, motions, a trial and appeals, which would be incurred by both parties before a resolution would be reached.

**Seriousness of Litigation Risks**

As set forth above, the case likely would result in a trial where there would be conflicting oral testimony and thus there was no guarantee of success on either side and Defendants might have prevailed on a motion for summary judgment, at trial, or on appeal

**Release of Claims**

In return for the above consideration, the Plaintiff will release the claims made in the complaint which are for unpaid wages and statutory damages for improper notices under the WTPA. The release is appropriately narrow and does not release claims not brought by the complaint and thus is reasonable.

**Arm's Length Bargaining**

Both parties engaged in good faith, arm's-length negotiation in reaching this settlement, and negotiated settlement terms over the phone and email and over the course of numerous days until a tentative settlement was reached, and a Settlement Agreement was signed. The parties exchanged numerous offers and counter offers before a compromise settlement was finally reached.

**Possibility of Fraud or Collusion**

Given the parties' arms-length, good faith negotiating and the fact that the settlement is recovering a significant amount of the potential damages, the parties submit that there was no fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be an appropriate settlement.

**PLAINTIFF'S COUNSEL CONTENDS THE LEGAL FEES TO BE PAID UNDER THE SETTLEMENT AGREEMENT ARE REASONABLE**

The Parties agreed in the Settlement Agreement to legal fees in the amount of $3,333 equal to 1/3 of the settlement. Defendants have agreed not to oppose counsel's request for approval of attorneys' fees. Attached as Exhibit B are the contemporaneous time and expenses records of William C. Rand. The fee is reasonable on a percentage basis as it represents one-third of the

settlement ([$10,000/3). The fee is also reasonable on a lodestar basis as counsel's time spent on the case to date is 29.8 hours which at Plaintiff's Counsel's $450 per hour rate equals a lodestar of $13,410 which constitutes a multiple of .25, ($3,333/$13,410) which is less than one and thus presumed fair, and constitutes an hourly rate of $181.81 (fee of $18,089.82/99.5 hours), which is reasonable.

The FLSA and New York Labor Laws are fee-shifting statutes, entitling Plaintiffs to recover their reasonable attorney's fees and costs. See 29 U.S.C. § 216 (b). Legal fees in FLSA actions are the result of fee shifting in the statute and are not subject to proportionality to the recovery but rather are recovered based on the work performed regardless of the monetary recovery achieved. *Ramirez v. M.L. San Jose Enters.*, 2021 U.S. Dist. LEXIS 57178 (S.D.N.Y. March 25, 2021) (LGS) (approving FSLA settlement)

The Second Circuit has stated that fees awarded under fee shifting statutes must be "reasonable" and "based on scrutiny of the unique circumstances of each case." *Goldberger v. Integrated Resources, Inc.* 209 F. 3d 43, 47-53 (2d Cir. 2000). Goldberger also establishes six factors a reviewing court should consider in evaluating what constitutes a reasonable fee: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation…; (3) the risk of the litigation; (4) the quality of the representation [measured by result]; (5) the requested fee in relation to the settlement; and (6) public policy considerations."' *Id.* at 50 (citation omitted). *See Chambless v. Masters, Mates, & Pilots Pension Plan*, 885 F. 2d 1053, 1058 (2d Cir. 1989). Furthermore, a reasonable hourly rate is a rate "in line with … prevailing [rates] in the community for similar services by lawyers of reasonable comparable skill, expertise and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Chambless*, 885 F. 2d at 1058-59. A district court can also use its knowledge of the relevant market when determining the reasonable hourly rate. *See Miele v. New York State Teamsters Conference Pension & Ret. Fund*, 831 F. 2d 407, 409 (2d Cir. 1987).

The Second Circuit also stated that district courts should not reduce the award of attorney's fees simply because an attorney is a solo practitioner. *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91 at 98 n. 6 (2d Cir. 2006). In determining the relevant "market" a court may look to rates charged by those in a similar professional situation, including looking to the rates charged by large or medium-sized law firms. The rationale behind this practice is that a client represented by a medium-sized firm typically pays less than a large-sized firm with higher overhead costs. Overhead costs should not determine which attorneys should be awarded a higher or lower fee. Some highly skilled attorneys decide not to affiliate themselves with a firm for various reasons and choose to be solo practitioners. Moreover, the inquiry into the reasonable hourly rate should focus on the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Blum*, 465 U.S. at 895 n.11; *Chambless*, 885 F. 2d at 1058-59.

The Second Circuit has made clear that no proportionality to recovery should be required in determining a fair fee in an FLSA case because the FLSA includes a fee shifting provision designed to encourage attorneys to bring cases that would not be economical under a straight percentage contingency. *See Luo v. L&S Acupuncture, P.C.*, 649 Fed. Appx. 1, 3 (2d Cir. May 16, 2016) (post *Cheeks*, stating "we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation"). In the *Luo* case, the Second Circuit refused to reverse the legal fee award of $64,038 in a case where the plaintiff recovered only $4,830.67. The Court stated:

> We have held that the "lodestar" is the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 183 (2d Cir. 2008); see also Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) ("The lodestar approach governs the initial estimate of reasonable fees."). Appellants concede that there is no "per se proportionality rule," Appellants' Br. at 10, and "we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation," Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005). In Millea v. Metro-North Railroad Co., 658 F.3d 154 (2d Cir. 2011), we held that it was legal error for a district court to calculate the fee award as a proportion of damages in a suit under the Family and Medical Leave Act. Id. at 169. We noted that although a district court "may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely." Id. (citation omitted). "Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel." Id. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." Id. As both the FLSA and the New York Labor Law are fee-shifting statutes, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a), we see no reason to depart from the general rule in this case.

*Luo*, 649 Fed. Appx. at 2-3 (emphasis supplied); *see Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (fee not required to be proportional to recovery; finding that limiting attorneys' fees to 33% of total settlement contravenes the FLSA, a uniquely protective statute, because attorneys would be discouraged from litigating low value cases and these plaintiffs would be left with little legal recourse). "When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher, 948 F.3d at 606.

Thus, the Second Circuit has made clear that the district court may not alter a settlement and has made clear that the lodestar is the presumptively reasonable fee and that proportionality is not a factor to consider as "calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee shifting statutes." Id.

**A. Percentage Analysis-The Fees equal One-Third of the Total Settlement and thus are Deemed Reasonable**

Instead of using the lodestar method, courts may employ the "percentage of the fund" method. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. Here the fee requested is fair because it equals one-third the recovery after the reimbursement of expenses.

Courts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery. *See Zorn-Hill v. A2B Taxi LLC*, 2020 U.S. Dist. LEXIS 170608, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (collecting cases); *Garcia v. Atlantico Bakery Corp.*, 2016 U.S. Dist. LEXIS 84631, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases.").

Given that courts in this Circuit routinely award one third of the Settlement Amount for attorney's fees, the fee request for one-third of the settlement should be found to be reasonable.

In fact, a number of cases have recently awarded more than one-third the recovery based on the fee shifting provision of the FLSA. *See Vilalva-Estrada v. SXB Rest. Corp.*, 2016 U.S. Dist. Lexis 43609 (S.D.N.Y. March 31, 2016) (approving fees of $1,500 equal to 37.5% of recovery); *Flores v. Steinway Dental Lab, Inc.*, 2017 U.S. Dist. Lexis 20710 (awarding fees of $21,000 equal to 49.4% of Settlement); *Kim v. Major Auto Group*, 2016 U.S. Dist. Lexis 39676 (E.D.N.Y. March 24, 2016)(awarding fees of $81,000 equal to 36% of settlement); *Ali v. David Bouley LLC*, No. 14 Civ. 07135, ECF No. 70 (S.D.N.Y. Oct. 18, 2016) (approving $40,000.00 for the two plaintiffs and $57,500.00 of attorneys' fees); *Delilar v. Foodfest Depot, LLC,* No. 15 Civ. 0459, 2016 WL 3452797, at *1-*2 (S.D.N.Y. June 14, 2016) (approving $35,000.00 payable to the plaintiff with $65,000.00 for attorneys' fees); *Saldivar v. Aki Renovations Group, Inc.*, No. 15 Civ. 03130, ECF Nos. 38, 36-2 (E.D.N.Y. Feb. 10, 2016) (approving $18,121.61 to the four plaintiffs and $30,000 of attorneys' fees); *Trimmer v. Barnes & Noble, Inc.*, No. 13 Civ. 579 (JGK), ECF No. 89 (S.D.N.Y. May 21, 2015) (Order and Letter approving of $37,500 for the plaintiffs and $223,270 of attorneys' fees); *Zamora v. One Fifty Seven Corp.*, 2016 U.S. Dist. Lexis 49286 at *2 (S.D.N.Y. April 1, 2016) (approving $56,843 to the plaintiff and $71,657 of attorneys' fees).

*See also Jones v. Bryant Park Market Event LLC*, 13-CV-1369, ECF Entry of 10/24/2016 (AJP - SDNY)(approving $4,000 in damages and $55,000 in fees and costs under Cheeks); *Domenech v. Parts Authority, Inc.* 15CV-3595, ECF No. 41, 42 (ILG - EDNY)(approving $70,000 in hourly legal fees and costs under *Cheeks*); *Stokes v. Bedford Stuyvesant New Beginnings Charter School*, Case No. 16-CV-04575 ($17,500 in hourly legal fees and costs and $20,000 in damages under *Cheeks*); *Kelly v. Call-A-Head Corp.*, Case No. 17-CV-5737 ($10,400 in hourly legal fees and $7,100 in damages under *Cheeks*); *Cajamarca v. Sound Marine Construction & Salvage, Inc.*, 15- cv-6667, ECF No. 23, 25 (LTS - SDNY)(approving $19,445 in hourly legal fees and $30,000 in damages); *Tineo v. Dean's West Side Contracting Corp.*, 15-cv-2323, ECF NOS. 28-29 (S.D.N.Y) (JMF)(RLE)($19,385 in hourly legal fees and $30,000 in damages); *Boodhoo v. Jet Way Security & Investigation LLC*, 15-CV-1733, ECF Nos 25, 27 (CBA-RER – EDNY)($15,000 in hourly legal fees and $9,540 in damages); *Lopez v. 1710 Montgomery Realty Assoc., L.P. et al.*, Case No.16-cv-06038, ECF No. 34 (approving $20,000 in damages and hourly fee of $15,000 under *Cheeks*); *Francis v. Bowery Residents' Committee, Inc.*, 15-cv-07102, ECF No. 25 (RLE - SDNY) (approving $5,000 in damages and $10,500 in fees and costs under *Cheeks*); *Caraballo v. 1195 Sherman Ave.*, 15-cv-02325(WHP - SDNY), ECF No. 31 (approving $3,000 in damages and $10,000 in fees and costs under *Cheeks*); *Precil v. U.S. Security Associates, Inc.*, 15-cv- 8893, ECF No. 14 (PGG - SDNY) (approving $3,780 in damages and $8,720 in fees and costs under *Cheeks*); *Soler v. Mase Electric, Inc. et al*, 16-cv-1653(LMS - SDNY), (February 7, 2017 text only Order - approving $4,500 in damages and $10,000 in fees and costs under *Cheeks*). Here the fee represents one-third of the recovery and thus is fair and reasonable.

**B. Lodestar Cross Check Analysis-The Fee Equals less Than the Lodestar and Thus is Reasonable**

A lodestar cross-check supports the requested fees. When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the

case."); *see Lawtone-Bowles v. City of New York*, 2021 U.S. Dist. LEXIS 69167 *; 2021 WL 1326865 at *11 (S.D.N.Y. April 8, 2021).

The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *See James v. China Grill Mgmt.*, No. 18-CV-455 (LGS), 2019 WL 1915298 at *8 (S.D.N.Y. 2019);

In determining the reasonable hourly rate, this Court must look to the current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F. 3d 858, 882 (2d Cir. 1998). Because Plaintiffs' Counsel's office is located in Manhattan, the Court should look to the community of Manhattan labor and employment law litigation attorneys for comparable market rates. When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008).

Plaintiff's counsel's hours reasonably reflect the numerous hours required to prosecute an action on behalf of the Plaintiffs including but not limited to (a) drafting a complaint, (b) drafting a declaration for the Plaintiff, (c) reviewing and analyzing numerous pages of documents, (d) appearing and preparing for a preliminary conference, (e) communicating with the client to explain the risk associated with the claims and to negotiate the settlement, (f) drafting and executing the settlement agreement, and (g) drafting motion for settlement approval.

The $3,333 fee requested is 25% of the $13,410 lodestar (equal to 29.8 hours times $450 per hour) and represents a lodestar multiple of .25 which is less than 1. This lodestar is more than double the fees sought and demonstrates that the fee is reasonable. The fee shifting provision of the FLSA was designed specifically for this type of complex case where the law is complex and the amount of recovery for the individual claimant is not extremely large.

The fee is reasonable on a lodestar basis as Plaintiff's Counsel's time spent on the case to date is 29.8 hours which at Plaintiffs' Counsel's $450 per hour rate equals a lodestar of $13,410 which constitutes a multiple of .25 which is less than one and thus presumed fair. <u>See Villanueva v. 179 Third Ave. Restaurant Inc</u>., 2018 U.S. Dist. Lexis 116379 at *8 (S.D.N.Y. July 12, 2018) (J. Nathan) (where lodestar multiplier is less than one, fee is deemed reasonable). Moreover the fee represents a reasonable hourly rate of $111.84 (fee of $3,333/29.8 hours).

"In recent years multipliers of between 3 and 4.5 have become common" and a multiple of 2.09 has been described as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." In re Lloyd's Am. Trust Fund Litig., 2002 U.S. Dist. LEXIS 22663,2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); see also Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").Courts regularly award lodestar multipliers from two to six times lodestar." *Johnson v Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (S.D.N.Y.

September 16, 2011) (*citing In re Lloyd's Am. Trust Fund Litig.,* 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (stating that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y.1998) (awarding multiplier of 3.97 times lodestar)); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); *In re RJR Nabisco*, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).

Here, the multiple is less than one which is far less than the two to six range that courts commonly use and demonstrates that the fee is reasonable. The rate of $450 per hour for the lodestar check is reasonable, given the complexity of the action and the experience of the Plaintiffs' attorney. The biography of William C. Rand is attached as Exhibit C and shows that he has over twenty years of experience prosecuting wage cases and demonstrates that the $450 per hour rate is appropriate.

To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs*., 722 F.2d 23, 25 (2d Cir. 1983).

Courts in the Southern District have often approved rates of $450 per hour or more. *See Lawtone-Bowles v. City of New York*, 2021 U.S. Dist. LEXIS 69167 *; 2021 WL 1326865 at *11 (S.D.N.Y. April 8, 2021) (approving rates of $400 to $735 for partners) (citing cases); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015) (approving partner rates of $675 per hour*); Broad. Music, Inc. v. Pamdh Enters., Inc.,* No. 13-cv-2255 (KMW), 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014) (collecting cases awarding $400 to $735 per hour for partners). *See Douglas v. Spartan Demolition Co. LLC*, 2018 U.S. Dist. LEXIS 163387 (Sept. 21, 2018 S.D.N.Y.) (finding $450 per hour reasonable rate for the work of attorney William C. Rand); *See Cortes v. Juquila Mexican Cuisine Corp.*, 2021 U.S. Dist. Lexis 60374 at *10 (E.D.N.Y. March 29, 2021 (approving $500 per hour rate with extensive analysis of rates).

Thus the fee is fair as the lodestar multiple is less than one, indicating that the Plaintiff's counsel's fee is far less than his hours worked paid at his fair rate.

### C. Negotiated Attorney's Fee Agreements Are Favored

The Parties agreed in the Agreement that the Court must approve attorneys' fees and expenses, and such fees and expenses shall not exceed $3,333. Defendants have also agreed not to oppose counsel's request for approval of attorneys' fees. Negotiated attorneys' fee agreements are favored in collective action settlements. Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. *See In re MDC Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement… , including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of

the fee between themselves."); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.").

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986). The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Id. "Markets know market values better than judges do." Id. at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." Id. at 572. Here, such a negotiation was feasible, and was conducted. The Settlement, including a fee payment, was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the Plaintiff, and the magnitude of the fee the Court might award if the matter were litigated. Thus, the negotiated fee is entitled to a presumption of reasonableness.

### C. The Requested Costs Are Reasonable

In addition to the time he spent, Plaintiff's counsel incurred $402 in costs and expenses in the pursuit of this litigation, constituting the fee associated with filing the complaint. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987*); Sheet Metal Workers Nat'l Pension Fund v. Evans,* No. 12 Civ. 3049, 2014 U.S. Dist. LEXIS 80118, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). These expenses were reasonably and necessarily incurred in the prosecution of this action. Accordingly, Plaintiff's counsel respectfully requests that the Court award reimbursement of these expenses in full.

**CONCLUSION**

In conclusion, Plaintiff requests that the Court approve the settlement.

Respectfully,

s/William C. Rand

William C. Rand

cc: SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Kevin J. Smith, Esq.
30 Rockefeller Plaza
New York, NY 10112-0015
212-634-3052
KJSmith@sheppardmullin.com
Attorneys for Defendants
LIFESPIRE, INC. and THOMAS LYDON